IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LESLIE KELLY,
    PLAINTIFF

Civil Action No. 03-368

v.

Judge McLaughlin
Magistrate Judge Baxter

MARTIN SAPKO, ET AL.,
    DEFENDANTS

### DECLARATION OF MARTIN SAPKO, FACTORY MANAGER

1. I am the Factory Manager of the Federal Prisons Industries, Inc. (FPI or trade name UNICOR) factory at the Federal Correctional Institution (FCI) in McKean, Pennsylvania. I have been employed in this capacity since approximately February 27, 2000. As the Factory Manager at FCI McKean, I oversee and direct the operations of the UNICOR furniture factory at FCI McKean.

2. I understand inmate Leslie Kelly, Register Number 26864-039, has filed the above-captioned civil action in the United States District Court for the Western District of Pennsylvania, naming me as a defendant. Inmate Kelly alleges, among other things, that he was exposed to hazardous air-borne particulates at his inmate work assignment in the UNICOR factory at FCI McKean, and was not

issued proper safety equipment which would permit him to safely work under the conditions present in the UNICOR factory.

3. FPI is a wholly-owned government corporation, created by Congress in 1934 with the mission of providing work simulation programs and training opportunities for inmates confined in federal correctional facilities. In order to achieve this goal, FPI operates factories in over 100 locations across the country. It manufactures products and services in seven different business groups: Electronics, Clothing & Textiles, Fleet Management & Vehicular Components, Services, Office Furniture, Recycling, and Industrial Products.

4. Typically, each prison (with the exception of minimum security and administrative/pretrial facilities) in the Federal system contains one UNICOR factory which is a division of one of the above referenced business groups. At all times relevant to this case, the factory at FCI McKean was part of the Office Furniture Business Group. It is UNICOR's goal to employ a minimum of 25% of all eligible inmates incarcerated in the federal system.

5. Decisions relating to the hiring and removal of inmates from FPI work assignments are governed by BOP Program Statement 8120.02, FPI Work Programs for Inmates. **Attachment A is a true and correct copy of Program Statement 8120.02, FPI Work Programs for Inmates.**

6. Inmate Kelly was first assigned to the UNICOR factory on September 3, 2002, and was assigned to a Layup 1 position. He worked in this position until October 3, 2002, when he was transferred to an Assembly position. Although he only worked in UNICOR until April 25, 2003 he was a chronic management problem. **Attachment B is a true and correct copy of inmate Kelly's work history.**

7. The UNICOR factory at FCI McKean is equipped with two dust collection systems, each consisting of large dust collectors, extensive duct work, fans, vacuums and a waste portal. The dust collectors have been operational in the UNICOR factory at FCI McKean since approximately September 11, 1989, and each of the two dust collectors have the capacity to move 34,000 cubic feet of air per minute from the UNICOR factory. **Attachment C is a true and correct copy of Submittal Data regarding the dust collection system**

in use at FCI McKean (2 dust identical dust collection units).

8. The dust collection system is connected to the furniture-manufacturing machinery in the UNICOR building. According to operational procedures in the UNICOR factory at FCI McKean, the manufacturing machinery is not to be operated unless the dust collection system is turned on first.

9. Micore Board is initially cut to size on the SCMI Horizontal Beam Panel Saw. This machine has two dust collection connections: (1) a six inch port connected to the bottom and (2) a five inch port connected to the top portion of the machine. Each of these connections provide dust collection to the saw blade at the point of machining. In the next step of the process, the four edges of the Micore Board are shaped on the Delta Shaper machine. This machine has one four inch port connected to the shaper fence, which supplies dust collection directly at the point of machining. In the third and final machining operation, the Onsrud Inverted Router is used to create a pocket in the back side of the Micore Board for support brackets. This operation is only done to half the quantity ordered. This machine has a six inch port connected to the bottom supplying dust collection

directly to the point of machining and a four inch port connected to a hood located directly over the point of machining to supply dust collection for particles, if any, that are not collected from the bottom. All of the aforementioned machines are connected to the main dust collection plenum leading to one of the two main dust collection systems.

10. Dust and air entering the dust collection system through spiral pipes such as the ones described above, are moved by fans within the dust collection system from the machinery process through smooth round ducts, to a large vacuum located on the outside of the building. The spiral pipes referenced above, are actually smooth on the inside for better dust collection. The vacuum pulls dust and air from the factory to one of the two large cone-shaped filter houses where air is filtered and dust is evacuated into to a hopper, which is also located outside of the UNICOR building. The filtered air is then returned to the factory though square ducts. The dust that is filtered from the factory air is collected in a hopper and disposed at a site away from FCI McKean and the UNICOR factory. **Attachment D is a true and correct copy of photographs taken on January 13, 2005, depicting the dust collection system at the UNICOR**

        factory at FCI McKean. Attachment E is a true and correct copy of a diagram of the air filter house depicting the internal components.

11. To the best of my recollection, inmate Kelly submitted no complaints, either verbally or in writing, to my attention relating to conditions in the FPI factory. He did not report any work-related injuries or illnesses to me, nor did he request any special safety equipment that he could use at his inmate work assignment.

12. To the best of my knowledge and recollection, inmates assigned to work assignments in the UNICOR factory at FCI McKean were required to wear hearing protection and goggles. Dust masks and gloves were available to inmates upon request from their work supervisors. If an inmate were to request special safety equipment from me to use during his work assignment, arrangements would be made through the Safety Department to furnish the appropriate equipment. Inmate Kelly never requested a respirator to use at his inmate work assignment. If he had done so, an appropriate accommodation would have been made.

13. Under no circumstances would I ever alter any Material

Safety Data Sheet (MSDS) in the UNICOR factory, nor would I direct any person in the institution (be they staff or inmate) to alter the MSDS sheets in the UNICOR factory.

I declare under penalty of perjury in accordance with the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge and belief.

_____  
Martin Sapko  
UNICOR Factory Manager  
FCI McKean

1/25/06  
Date