Westlaw Download Summary Report for GOLDRING,DOUG 5288651

| | |
|---|---|
| Date/Time of Request: | Wednesday, January 31, 2007 14:02:00 Central |
| Client Identifier: | DOJ |
| Database: | DCT |
| Citation Text: | Slip Copy |
| Lines: | 346 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

**Westlaw.**

Slip Copy
Slip Copy, 2006 WL 3337385 (W.D.Va.)
(Cite as: Slip Copy)

Page 1

**H**
Briefs and Other Related Documents
Mayo v. Morris W.D.Va.,2006.Only the Westlaw citation is currently available.
United States District Court, W.D. Virginia, Roanoke Division.
Michael MAYO, Plaintiff,
v.
Dr. Juanita MORRIS, et al., Defendants.
Civil Action No. 7:06CV00280.

Nov. 15, 2006.

Michael Mayo, Mitchells, VA, pro se.
Carlene Booth Johnson, Perry & Windels, Dillwyn, VA, for Defendants.

**REPORT AND RECOMMENDATION**
MICHAEL F. URBANSKI, Magistrate Judge.
*1 Plaintiff Michael Mayo, an inmate proceeding *pro se*, filed the instant civil rights action pursuant to 42 U.S.C § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Mayo alleges that while he was incarcerated at the Albemarle Charlottesville Regional Jail ("Jail"), defendants violated his constitutional rights because they failed to provide him with adequate medical care and were deliberately indifferent to a hazardous condition. By Order entered August 31, 2006, all dispositive matters in this action were referred to the undersigned to submit proposed findings of fact and a recommended disposition.

This matter is before the court on defendants' motions for summary judgment. [FN1] The court notified Mayo of defendants' motions as required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), and advised him that his failure to reply to the defendants' motions may result in dismissal and/or summary judgment being granted for the defendants. As Mayo has filed a response to defendants' motions and the time allotted for any further response has expired, this matter is ripe for disposition.

> FN1. At plaintiff's request his medical records were incorporated into his response to defendants' motions to dismiss. Further, after reviewing those records, defendants stated that the records support defendants' assertion that Mayo did not suffer any constitutionally cognizable injury. Accordingly, the court finds that as the medical records have been provided outside of the original pleadings and will be considered by the court in the resolution of the pending motions, defendants' motions are properly construed as motions for summary judgment. *See* Fed.R.Civ.P. 12(b)(6).

Upon review of the record, the undersigned finds that Mayo has not presented any issue of material fact and that the defendants are entitled to judgment as a matter of law. Therefore, the undersigned recommends that defendants' motions for summary judgment be granted and Mayo's complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.

Mayo alleges that on or about March 24, 2006, his cell mate passed a brown paper bag, containing a used colostomy bag, through the cell bars causing human waste to be deposited onto the bars. Mayo then claims that when he subsequently reached through the bars, the open sores on his arm came into contact with the waste, and his sores later became painful, itched, and infected, but defendants refused to treat him. Additionally, he claims that thereafter he suffered from continuous nausea, vomiting, and diarrhea which too were ignored by medical staff.

Mayo states that he made several complaints and requests for medical treatment following his exposure to his cell mate's waste on March 24, 2006, but he was not examined by medical personnel until April 20, 2006, when he was given an AIDS and syphilis test. However, Mayo concedes that he spoke to medical staff several times between March 24 and April 20, 2006, and voiced his concerns regarding his alleged exposure on March 24, 2006, but was advised that his limited exposure presented a minimal health concern. Additionally, he admits that medical staff examined his sores multiple times after the alleged exposure and determined that no medical treatment was necessary.

Mayo also claims that he repeatedly requested that the bars of the cell be cleaned to remove any

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

lingering contaminate, but that his requests were denied. However, Mayo states that he and other inmates were provided with "Easy Dat," a cleaning solution, to personally clean their cells and that the cells, including the bars, were power washed and disinfected within days of the incident.

*2 In support of his response to defendants' motions, Mayo requests that the court consider his medical records. Pursuant to the September 21, 2006 Order, defendants were directed to produce Mayo's medical records from March, 2006 through his transfer from the Jail in June, 2006.[FN2] Mayo's medical records reveal that during his brief incarceration at the Jail he was examined by medical staff on more than fifty separate occasions for a variety of complaints. During his medical intake exam on March 20, 2006, Mayo advised the examining nurse that immediately prior to his incarceration, he had been abusing heroin and methadone, was having sex with prostitutes, was injecting himself with unknown drugs provided by a "friend," but that he had tested negative for HIV. The nurse noted during his exam that Mayo was missing several teeth, he was underweight, and had numerous crusted sores on his arms. The nurse cleaned the sores, removed the dead skin, and applied an antibiotic. Further, she noted that Mayo should have an HIV recheck in six months. Mayo's sores were rechecked on March 31, 2006. During the exam Mayo reported that he was feeling well, and the nurse noted that although he still had some skin lesions, overall his skin problem seemed to be resolving. During that exam, Mayo did not complain that he was exposed to human waste nor did he request any blood tests. Likewise, during an exam on April 20, 2006, Mayo reported that he was feeling well, was exercising and playing a lot of basketball, and was gaining muscle mass. The nurse noted that his skin lesions were largely resolved, but had left scars. Additionally, at his request, blood work for an HIV test and general blood chemistry were drawn, both of which yielded negative results.

> FN2. Mayo contests the accuracy of those records, arguing that defendants falsified the records to lend weight to their motions. By Order entered November 7, 2006, the court found no merit to Mayo's claims that defendants altered his medical records.

Mayo did not voice any complaints of general malaise until May 6, 2006. Thereafter he began to complain of vomiting, diarrhea, nausea, and weight loss, which he alleged had been ongoing for at least two months and which he attributed to the March 24, 2006 incident. However, his medical records indicate that despite these complaints he continued to participate in recreation, during which he bragged to medical staff he played vigorous games of basketball against much younger inmates, he frequently refused medical treatment, he repeatedly refused to be housed in the medical unit so staff could observe his alleged vomiting and diarrhea, and when he was finally forcibly placed in the medical unit, staff observed that his gastrointestinal processes were normal. Moreover, Mayo's records reveal that during the three months he alleges to have been continuously ill, he gained twenty five pounds.

II.

In support of their motions for summary judgment, defendants argue that Mayo failed to exhaust his administrative remedies with respect to any alleged injury he suffered on March 24, 2006, that he has failed to allege a claim under § 1983, and that in the event Mayo suffered a constitutional injury, defendants are entitled to qualified immunity.

III.

*3 Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir.1985). However, the court need not treat the complaint's legal conclusions as true. *See, e.g., Custer v. Sweeney,* 89 F.3d 1156, 1163 (4th Cir.1996) (court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted); *Estate Constr. Co. v. Miller & Smith Holding Co.,* 14 F.3d 213, 217-18 (4th Cir.1994). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 3
Slip Copy, 2006 WL 3337385 (W.D.Va.)
**(Cite as: Slip Copy)**

answers to interrogatories, the adverse party may not rest on mere allegations or denials of the adverse party's pleadings. Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed.R.Civ.P. 56(e). However, a prisoner proceeding *pro se* in an action filed under § 1983 may rely on the detailed factual allegations in his verified pleadings to withstand a motion for summary judgment supported by affidavits containing a conflicting version of the facts. *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir.1979). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the adverse party.

### A. Exhaustion of Administrative Remedies

First, defendants argue that Mayo failed to properly exhaust all available administrative remedies before filing this action. Mayo counters that his attempts to exhaust were "blocked" because the grievances he submitted regarding the March 24, 2006 incident were marked "duplicate" and returned.

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all available administrative remedies before bringing a claim under § 1983 or RLUIPA. 42 U.S.C. § 1997e(a) (2000), *Woodford v. Ngo*, 126 S.Ct. 2378, 2382 (2006) (stating that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"); *Cutter v. Wilkinson*, 544 U.S. 709, 723 n. 12 (2005). Furthermore, prisoners must not just initiate timely grievances, but must also make a timely appeal of any denial of relief through all levels of available administrative review. *Woodford*, 126 S.Ct. at 2387 (holding that the PLRA requires "proper exhaustion" of institutional administrative remedies before filing any federal suit challenging prison conditions); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (stating that the PLRA applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); *Booth v. Churner*, 532 U.S. 731, 739 (2001) (finding that PLRA requires administrative exhaustion prior to the filing of a federal civil rights suit even if the form of relief the inmate seeks is not available through exhaustion of administrative remedies).

*4 Mayo produced eight grievances in support of his claim that he exhausted his administrative remedies. The first is marked as Exhibit 1 to his complaint and is dated March 24, 2006. In that grievance, Mayo states that earlier that day the open sores on his arms came into contact with human waste which had been deposited on the bars of his cell. Because of the contamination, Mayo indicated that he wanted the tray slot and bars of the cell disinfected and that he wanted to be tested for AIDS. Lt. Rawlings responded on April 3, 2006 that the cell block would be power washed and disinfected as soon as possible. Mayo appealed this response to the Supervisor/Department Supervisor the same day, and a response issued April 7, 2006 indicated that the cells would be washed. Mayo filed a second grievance on March 28, 2006 complaining that the bars had not yet been cleaned, this grievance was attached, unmarked, to his complaint. In a response dated March 31, 2006, Mayo was advised that the cell block would be power washed that weekend. Mayo was dissatisfied with this response and appealed the same day. The appeal was noted as a duplicate of the pending appeal of the March 24, 2006 grievance, and no further response was generated. In the interim, Mayo filed a third grievance on April 3, 2006, marked as Exhibit Z to his response to defendants' motion for summary judgement, again stating that on March 24, 2006, the open sores on his arms came into contact with human feces deposited on the cell bars and that he would like to be checked for an infection or be given an AIDS test. This too was marked as a duplicate of the March 24, 2006 grievance.

Mayo's fourth grievance, marked as Exhibit M-5 to his response to defendants motion, is dated May 9, 2006, and relays his dissatisfaction with the cleaning solution used to power wash the cells. Mayo appealed this grievance through all levels of administrative review. He filed a similar grievances on May 20, 2006, marked as Exhibit M-7 to his response, but this time complaining that he had only been provided with a toilet brush, hand brush, surface cleaner, and "Easy Dat" cleaning solution to clean his cell and shower. In response Mayo was advised that inmates would not be given bleach or other harsh chemicals to clean their cells or shower. Mayo did not appeal this response.

The remaining grievances produced, marked as Exhibit WW, M-3, and M-4 to his response to defendants' motion for summary judgment, do not relate to the March 24, 2006 incident. Instead, those grievances inquire as to whether human waste should be disposed of in bio-hazard bags, complain of a medical privacy issue, and lament that it took several hours to eliminate an unpleasant smell in the cell

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

unit, respectively.

The grievances produced do not suggest that Mayo has been denied medical treatment. Mayo claims that subsequent to his exposure to human waste on March 24, 2006, he was denied medical treatment for sores on his arms, nausea, vomiting, and diarrhea. Yet, the produced grievances request only that the cell bars be disinfected and that he be given an AIDS test. There is no mention of any resultant illness or that he has been refused medical treatment related to any actual illness. Accordingly, the undersigned finds that Mayo failed to satisfy the requirements of 42 U.S.C. § 1997e(a) and recommends that this claim be dismissed. See McGee v. Fed. Bureau of Prisons, et al., 118 Fed. Appx. 471, 476 (10th Cir.2004) (holding that to have properly exhausted a claim an inmate must have filed grievances with sufficient detail to alert prison officials of the possible constitutional claims which are now alleged as a basis for relief).

*5 Even if Mayo had exhausted his administrative remedies regarding his claim that he was denied medical treatment related to the March 24, 2006 incident, his allegations fail to state a claim on which relief can be granted. Mayo's medical records detail that he was seen over fifty times in less than three months for a multitude of complaints, including the instant allegations that he suffered from skin lesions and gastrointestinal distress; that he frequently refused medical treatment and/or hospitalization in the medical unit; that despite his complaints he continued to participate in recreation; and during the same period in which he alleges severe stomach upset he gained twenty five pounds. Accordingly, the undersigned finds that Mayo's claims of deliberate indifference to any medical need are without merit. See Farmer v. Brennan, 511 U.S. 825 (1994); see also, Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir.1997).

However, Mayo pursued his March 24, 2006 grievance that the cell bars had been contaminated with human waste, that he believed he may have been exposed to disease, and that he wanted the bars to be disinfected through all available levels of administrative review. Accordingly, the undersigned finds that Mayo's claim that defendants were deliberately indifferent to the health risk posed by the dirty cell bars was properly exhausted.

### B. Deliberate Indifference

Mayo alleges that defendants were deliberately indifferent to a hazardous condition because they failed to immediately disinfect the cell bars of Mayo's cell after being notified that human waste had been deposited on those bars. Mayo asserts that he is constantly concerned that due to the exposure he may have contracted AIDS or another disease. Defendants argue this fails to state a claim on which relief can be granted because Mayo has not suffered any actual injury and there is no constitutional protection from mere fear or concern of contracting a disease while imprisoned.

To establish deliberate indifference to a hazardous condition, a plaintiff must present evidence of having suffered serious or significant harm from the condition or demonstrate a substantial risk of such serious harm as a result of exposure to the challenged condition. Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir.1997); Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993). Further, the plaintiff must establish that defendants were aware of the facts from which the inference could be drawn that there was a substantial risk of serious harm and that defendants actually drew that inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994); Taylor v. Freeman, 34 F.3d 266, 271 (4th Cir.1994).

Mayo alleges that the defendants were deliberately indifferent to the health risk posed if his open sores came into contact with the human waste. However, Mayo has not alleged any facts which establish that defendants were in fact aware of any actual, serious risk nor were they indifferent to his health needs. Mayo has not presented any evidence which suggests his cell mate actually had a communicable disease nor that the defendants were aware of any such illness. Furthermore, Mayo concedes that defendants responded appropriately to his complaints of possible exposure in that he was provided with a cleaning solution to personally clean the cell, the cells were subsequently power washed, and he was examined by medical staff on numerous occasions. Accordingly, the undersigned finds defendants were not deliberately indifferent to Mayo's concerns.

*6 Moreover, Mayo has not established that he suffered any serious injury or is at risk of future injury. Mayo's medical records reveal that his overall physical health significantly improved during his incarceration at the Jail, and following his alleged exposure he tested negative for AIDS and/or other infectious diseases. His concerns of developing AIDS or some other disease in the future related to his alleged brief exposure to human waste are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3337385 (W.D.Va.)
**(Cite as: Slip Copy)**

Page 5

insufficient to state a claim on which relief can be granted. *Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir.1996)(finding that fear and emotional distress suffered from contemplating the risk of contracting AIDS or any other communicable disease fails to state an Eighth Amendment claim); *Lee v. Tillman,* 2006 WL 2715127, at *4 (S.D.Ala. Sept. 22, 2006) (stating that mere allegations of exposure to AIDS, tuberculosis, hepatitis, and staphylococcus bacteria absent actual, subsequent illness fail to state a constitutional claim); *see also Canell v. Multnomah County,* 141 F.Supp.2d 1046, 1053 (D.Or.2001). Accordingly, the undersigned finds that Mayo has failed to state a claim on which relief can be granted.

### IV.

For the reasons stated above, the undersigned finds that Mayo has failed to present any issue of material fact and that the defendants are entitled to judgment as a matter of law as to all claims raised in his complaint. Accordingly, it is recommended that the defendants' motions for summary judgment be granted and that Mayo's complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The clerk is directed to immediately transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if they have any, to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusions of law rendered herein by the undesigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C § 636(b)(1) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by the reviewing court as a waiver of such objection.

Further, the Clerk is directed to send a certified copy of this Report and Recommendation to Plaintiff and all counsel of record.

W.D.Va.,2006.
Mayo v. Morris
Slip Copy, 2006 WL 3337385 (W.D.Va.)

Briefs and Other Related Documents (Back to top)

• 7:06cv00280 (Docket) (May 5, 2006)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.