# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL W. HILL,

        Plaintiff,

vs.

UNITED STATES OF AMERICA,
JOHN J. LAMANNA,
WILLIAM K. COLLINS,
MARTY SAPKO,
STEPHEN HOUSLER,
ROBERT KLARK,
ROBERT REOME,
BETH FANTASKEY, and
DEBORAH FORSYTH,

        Defendants

)  Docket No. 03-323E
)  (Judge Susan Paradise Baxter)
)
)  ELECTRONICALLY FILED PLEADING
)
)  PLAINTIFF'S BRIEF IN OPPOSITION TO
)  DEFENDANTS' MOTION TO DISMISS, OR
)  IN THE ALTERNATIVE, FOR SUMMARY
)  JUDGMENT
)
)  Filed on behalf of:  Plaintiff Michael W. Hill
)
)  Counsel of record for this party:
)  Richard A. Lanzillo, Esq.
)  Knox McLaughlin Gornall
)  & Sennett, P.C.
)  120 West 10th Street
)  Erie, PA 16501
)  Telephone (814) 459-2800
)  Facsimile (814) 453-4530
)  Email rlanzillo@kmgslaw.com
)  PA53811

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LESLIE R. KELLY,

        Plaintiff,

vs.

UNITED STATES OF AMERICA,
JOHN J. LAMANNA, MARTY SAPKO,
DEBORAH FORSYTH, and STEPHEN
HOUSLER,

        Defendants

)  Civil Action No. 03-368E
)
)  Judge McLaughlin
)  Magistrate Judge Baxter
)
)
)
)
)
)
)
)

| KEVIN SIGGERS, | ) | Civil Action No. 03-355 E |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| JOHN LAMANNA, DEBORAH | ) | |
| FORSYTH, MARTY SAPKO, and | ) | |
| STEPHEN HOUSLER, | ) | |
| | ) | |
| Defendants | ) | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| MYRON WARD, | ) | Docket No. 04-11 |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| JOHN LAMANNA, DEBORAH | ) | |
| FORSYTH, MARTY SAPKO, | ) | |
| STEPHEN HOUSLER, and NED | ) | |
| WATSON, | ) | |
| | ) | |
| Defendants | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| KENNY HILL, | ) | Docket No. 05-160E |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| vs. | ) | |
| | ) | |
| JOHN J. LAMANNA, DEBORAH | ) | |
| FORSYTH, MARTY SAPKO, and | ) | |
| STEPHEN HOUSLER | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiffs, Kenny Hill, Michael Hill, Leslie Kelly, Kevin Siggers, and Myron Ward, commenced this action against Defendants asserting claims arising out of hazardous working conditions to which they were exposed during their incarceration at the Federal Correctional Institution in McKean, Pennsylvania ("FCI McKean"). The procedural history of this and related cases is well-known to the Court. Defendants have again moved for summary judgment and, alternatively, to dismiss Plaintiff's Amended Complaints. Defendants' motion should be denied. Plaintiffs have asserted valid constitutional claims under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

## II.    RELEVANT UNDISPUTED FACTS

Each of the plaintiffs in these related actions asserts claims arising out of their prior incarceration at FCI McKean in Bradford, Pennsylvania. Between 2000 and 2003, plaintiffs were assigned to the Federal Prison Industries, Inc. ("FCI", or trade name "UNICOR") factory at FCI McKean. FPI is a wholly-owned government corporation, created by Congress in 1934. FPI operates factories in several locations across the country and manufactures a variety of products, including office furniture made from wood and particleboard-type products. (See Forsyth deposition attached to Defendants' Appendix to Motion for Summary Judgment as Exhibit 17 at pp. 9-10, Lamanna deposition Attached to Defendant's Appendix to Motion for Summary Judgment at Exhibit 18 at pp. 8-9).

Until approximately January, 2006, the UNICOR factory at FCI McKean manufactured office furniture made from wood and particleboard-type products. While this case

was pending, but before discovery had opened, and without notice to Plaintiffs, Defendants

discontinued manufacturing furniture and related products at the facility and dismantled the

facility as a furniture manufacturing facility.  As of January, 2006, the facility was converted to a

plastics manufacturing plant.  .  (See Forsyth deposition p.9; Housler deposition Attached to

Defendant's Appendix to Motion for Summary Judgment at Exhibit 14 at pp. 11, 45; and English

deposition Attached to Defendant's Appendix to Motion for Summary Judgment at Exhibit 16 at

p. 4).  As a result,  Plaintiffs' industrial hygienist was precluded from conducting an evaluation of

the site and the adequacy of its ventilation system.

Throughout their employment at UNICOR, each Plaintiff was instructed to work

in and around areas where Micore mineral fiber boards were being cut, sawed, sanded, machined

and otherwise handled by the Plaintiffs and others.  These processes produced silica dust as a

byproduct.  Defendants instructed Plaintiff and other inmates to clean and clear dust from the

floor and machines within the facility both by sweeping the dust with brooms and by

mechanically blowing the dust with air hoses.  ( See Siggers deposition Attached to Defendant's

Appendix to Motion for Summary Judgment at Exhibit 35 at pp. 13, 55, 66; and Ward deposition

Attached to Defendant's Appendix to Motion for Summary Judgment at Exhibit 33 at p.12).

These processes caused the dust to become airborne and ultimately to settle on the Plaintiffs'

persons and clothing.  At the time of each plaintiff's assignment to the UNICOR facility, the

Defendants knew or were on notice that the materials and processes in use at the facility exposed

plaintiffs to serious risks and hazards, including exposure to silica dust from the processing of

Micore boards.  The Defendants were specifically on notice of such hazards by their personal

observation of operations at the facility and by means of the Material Safety Data (MSDS) sheets

for Micore Board that were provided to Defendants.  Defendant Housler acknowledged that,

although the MSDS for Micore Board was available to him, he did not read it until OSHA became involved.  (See Housler, pp. 16-17).

In their Motion for Summary Judgment, Defendants do not dispute that silica dust is a known carcinogen and a cause of serious respiratory ailments and conditions and other health problems.  The ventilation system at FCI McKean's UNICOR facility did not prevent silica dust in significant amounts to become airborne.  (See Housler deposition p. 18).  Although management employees at the UNICOR facility were periodically present on the manufacturing floor long enough to observe the conditions under which plaintiffs worked, they did not remain for a period of time sufficient to expose themselves to health risks.  (See Housler deposition pp. 19, 23, 39; Forsyth deposition pp. 12, 28, 29; Lamanna deposition pp. 18, 19, 25).  Plaintiffs, on the other hand, worked in the facility for seven to eight hour shifts during which they inhaled the silica dust and had their skin directly exposed to the dust. (See  Michael Hill deposition Attached to Defendant's Appendix to Motion for Summary Judgment at Exhibit 31 at  pp. 18, 20; Forsyth deposition pp. 23-24; Siggers deposition pp. 27, 28, 71).

The only protection available to Plaintiff was a disposable "Do it Best" or "Breathe Easy" dust mask.  The Plaintiffs were not required to wear such masks and were provided with no training or instruction regarding the use of the masks.  (See Housler deposition p. 20, Ward deposition p. 11).  Moreover, the masks were accompanied by the following warning:

> This mask is not suitable for use against toxic or hazardous air contaminants, such as, but not limited to paint spray mists, asbestos, **silica**, cotton or other toxic dusts, fumes, gases and vapors.

See Document #38, Exhibit 14.

3

In the August 20, 2003 letter from OSHA to defendant, Stephen Housler, the Safety Manager at UNICOR, FCI McKean, defendants were specifically instructed that the workers at the facility "should be provided long sleeved work coveralls that can be closed at the neck and wrist to minimize skin contact," that "[t]hese coveralls should be left in the UNICOR Factory before personnel return to their living quarters and laundered separately from other clothing," that "personnel should be equipped with tight fitting goggles to prevent eye irritation," and that "[c]aps should also be provided to keep the dust out of the worker's hair."  Defendants, including defendant Housler, ignored these instructions.  (Housler Deposition, pp. 24-26).

While Defendants point to the results of air sampling tests conducted by OSHA that indicate that the air quality was acceptable on June 17 and 18, 2003, there is no evidence or reason to believe that the conditions that existed on that date were representative of the working conditions to which Plaintiffs were exposed during their employment at UNICOR.  Indeed, the evidence would support a finding that production levels on the dates preceding the OSHA inspection and Microbar testing were substantially less than typical production levels, which necessarily would have skewed the test and inspection results.  Production records obtained by Plaintiffs through discovery document that, from April 15, 2003 through the end of June, 2003, no more than 136 tack boards were processed at the UNICOR facility.  OSHA conducted air sampling on June 17 and 18, 2003.  In contrast, 849 tack boards were processed in October 2003 alone.  (See UNICOR Production Records, attached as Exhibit "A" hereto).

While this case was pending, but before discovery had opened, and without notice to Plaintiffs, Defendants discontinued dismantled the facility as a furniture manufacturing facility.  As of January, 2006, the facility was converted to a plastics manufacturing plant.  (See Forsyth deposition p. 9; Housler deposition pp. 11, 45; English deposition p. 4).  As a result,

Plaintiffs' industrial hygienist was precluded from conducting air quality testing and an overall evaluation of the site and the adequacy of its ventilation system.

The Defendants also disregarded the warnings and instructions set forth on the MSDS sheets for Micore Board and Loc-Weld.  For example, prior to OSHA's involvement, defendant Housler never even reviewed the MSDS for Micore board even though this product was regularly and routinely cut and processed in the UNICOR facility.  (Housler Deposition pp. 16-17).  In addition, the record contains evidence that the MSDS for Micore board, which was maintained by the Defendants, was altered by hand, such that, under the section devoted to personal protection, the word "respirator" was marked out and replaced with the word "mask" or "dust" in order to falsely indicate to UNICOR workers that dust masks provided sufficient protection against inhalation of the airborne silica dust and other dangerous manufacturing byproducts that were present at in the UNICOR facility.

Additionally, Plaintiffs worked in and around areas where the adhesive commonly known has Locweld 860/861 was being used.  Defendants were also on notice that the use of Locweld 860/861, a contact adhesive, in the UNICOR facility exposed plaintiffs and other workers to serious risks and hazards including the risk of fire and health risks associated with the presence of fumes from Locweld 860/861.  (See Housler Deposition p. 29).

Defendants' actions and omissions relative to the dangers and hazards associated with Micore board and Locweld 860/861 were part of an overall pattern of deliberate indifference by defendants to the safety and health of workers at the UNICOR facility.  This pattern was documented in an OSHA report dated August 20, 2003 and included *inter alia*: (1) allowing the accumulation of flammable vapors in the work area in violation of 29 C.F.R. §1910.106(e)(6)(i); (2) failure to provide appropriate instructions and training regarding chemicals in use at the

workplace in violation of 29 C.F.R. §1910.1200(h)(2)(ii) and 29 C.F.R. §1910.1200(h);

(3) allowing obstruction of proper airflow and air filtration within certain work areas in violation

29 C.F.R. §1910.107(b)(1); (4) permitting installation of combustible materials within the spray

booth of the UNICOR facility in violation of 29 C.F.R. §1910.107(b)(1); (5) failing to include

appropriate sprinkler equipment in certain areas of the facility in violation of 29 C.F.R.

§1910.107(b)(5)(iv); (6) allowing improper storage and obstructions around the paint booth of

the facility in violation of 29 C.F.R. §1910.107(b)(9); (7) allowing combustible residue from

manufacturing to accumulate in work areas in violation of 29 C.F.R. §1910.107(g)(2); (8) failing

to provide and/or require use of protective equipment where reasonably necessary for the

protection and safety of workers in violation of 29 C.F.R. §1910.132(a); (9) failure to observe

required "lock-out/tag-out" procedures for the protection and safety of workers in violation of 29

C.F.R. §1910.147(d)(4)(i); (10) allowing storage of materials in a manner and location that

created an unreasonable risk of fire or combustion within the facility in violation of 29 C.F.R.

§1910.176(b), 29 C.F.R. §1910.252(a)(2)(vii), and 29 C.F.R. §1910.303 (g)(1)(i); (11) requiring

operation of machines and other equipment within the facility that lacked proper guarding or

other safety devises reasonably necessary for the protection and safety of workers in violation of

29 C.F.R. §1910.212(a)(1), 29 C.F.R. §1910.212(a)(3)(ii), 29 C.F.R. §1910.213(r)(4), and 29

C.F.R. §1910.119(c)(2)(i); (12) allowing the existence of conditions that unreasonably exposed

workers to cave-in hazards while conducting work operations in violation of 29 C.F.R.

§1926.651(j)(2); (13) failure to install or place guarding necessary to protect workers from the

hazard of impalement in violation of 29 C.F.R. §1926.701(b); (14) failure to install railings

necessary to protect workers from fall hazards in violation of 29 C.F.R. §1910.23(c)(1); and (15)

failure to provide instruction and training regarding the proper use of respirators in the workplace

in violation of 29 C.F.R. §1910.134(k)(6).  (See OSHA Report dated 8/20/03  Attached to

Defendant's Appendix to Motion for Summary Judgment at Exhibit 11).

During their employment at the UNICOR facility, Plaintiffs were repeatedly and

consistently exposed to silica dust, vitreous fiber, perlite, slag wool, mineral wool, acetone,

Toluene, Hexane isomers, N-hexane and other dangerous materials through inhalation and direct

contact with Plaintiffs' skin, lungs, sinuses and eyes.  As a result of the dangerous conditions that

were permitted to exist at the UNICOR facility, Plaintiffs sustained personal injuries, including

chronic respiratory problems, sinusitis, irritation and damage to their lungs, sinuses, eyes and

skin and sensitization to materials.  In addition, Plaintiffs have been placed at an increased risk of

developing future diseases and health problems, including, but not limited to, cancer, Silicosis,

Pneumoconiosis, emphysema, and asthma, mycobacterium tuberculosis.

## III.     ARGUMENT

### A.     Genuine issues of material fact remain for trial and preclude the entry of summary judgment.

#### i.     Standard of Review

Defendants have styled their motion as a motion for summary judgment under

Fed.R.Civ.P. 56 (c), or, in the alternative, as a motion to dismiss pursuant to Fed.R.Civ.P.

12(b)(6).  "In deciding a motion to dismiss, [the Court] must accept all well-pleaded allegations

in the complaint as true, and view them in the light most favorable to the plaintiff."  Carino v.

Stefan, 376 F.3d 156,159 (3rd Cir. 2004).  The Court "may grant such a motion only where 'it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief.'"  Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c).  A genuine issue is one in which the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  When deciding a motion for summary judgment, a court must draw all reasonable

inferences in the light most favorable to the nonmoving party.  Big Apple BMW, Inc. v. BMW of

N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir.1992), cert. denied, 507 U.S. 912 (1993).  Moreover, a

court may not consider the credibility or weight of the evidence in deciding a motion for

summary judgment, even if the quantity of the moving party's evidence far outweighs that of its

opponent.  Id.

> ii.    **The Record Supports Findings that Hazardous Conditions
> Existed at the UNICOR Facility and that Defendants were
> Deliberately Indifferent to Substantial Risks of Serious Harm
> to Plaintiff in Connection with His Working Conditions at the
> UNICOR Facility.**

A prison official's "deliberate indifference" to a substantial risk of serious harm to

an inmate violates the Eighth Amendment.  See Helling v. McKinney, 509 U.S. 25 (1993);

Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1976).  Further, "the

treatment a prisoner receives in prison and the conditions under which he is confined are subject

to scrutiny under the Eighth Amendment."  Helling, 509 U.S. at 31.  This includes environmental

hazards that pose an unreasonable risk of serious damage to future health.  Id. at 33-35.

Defendants argue that they are entitled to judgment as a matter of law because the

evidence will not support a finding that hazardous conditions existed at the UNICOR facility.

Contrary to Defendants' assertion, however, the record fully supports a finding that Plaintiffs

were exposed to hazardous silica dust and other hazardous materials in connection with their

employment in the UNICOR facility.  In many ways, this case is analogous to Helling v.

8

McKinney, wherein the Supreme Court held that a cause of action exists under the Eighth

Amendment when a prisoner alleges that prison officials have exposed him, with deliberate

indifference, to levels of environmental tobacco smoke ("ETS").  509 U.S. at 35.  In this case, the

known hazardous substances were silica dust and other toxic byproducts of working with Micore

board and Locweld.  To appreciate the dangerous nature of these substances and the need for

safety and health precautions, one would need note only the content and warnings of the MSDS

for the products at issue.

　　　　　To prevail on an Eighth Amendment claim a plaintiff must satisfy both an

objective component and a subjective component.  See Wilson, 501 U.S. at 298-300.  First,

objectively, the deprivation alleged must be "sufficiently serious" to be considered cruel and

unusual.  See Farmer v. Brennan, 511 U.S. at 834 (1994) (citing Wilson, 501 U.S. at 298);

McNeil v. Lane, 16 F.3d 123, 125 (7th Cir. 1993).  For a claim based on a failure to prevent

harm, an inmate must show that he was incarcerated under conditions posing a substantial risk of

serious harm.  Farmer, 511 U.S. at 834, 114 S.Ct. at 1977.  As for the subjective component, a

plaintiff must show that defendants had a sufficiently culpable state of mind; that is that they

knew of the risk and operated with "deliberate indifference" to the inmate's health or safety.  Id.

See Drake v. Velasco, 207 F.Supp.2d 809 (N.D. Ill 2002)(holding that the inmate's allegations

regarding failure of correctional institution to provide "sanitary" meals supported a claim of

deliberate indifference).

　　　　　In this case, the record demonstrates that plaintiffs were exposed to Micore Board

fibers, sawdust and Locweld adhesive without instruction or appropriate protective gear.  These

facts are fully supported not only by the deposition testimony of the Plaintiffs, but also by MSDS

for the products, the instructions and warnings on the garden masks made "available" to

plaintiffs, the reports submitted by OSHA and, indeed, the deposition testimony of the

defendants themselves.  Throughout their employment at UNICOR, Plaintiffs were instructed to

work in and around areas where Micore mineral fiber boards were being cut, sawed, sanded,

machined and otherwise handled by Plaintiffs and others.  These processes produced silica dust

as a byproduct.  Defendants instructed Plaintiffs and other inmates to clean and clear dust from

the floor and machines within the facility both by sweeping the dust with brooms and by

mechanically blowing the dust with air hoses.  (See Siggers deposition pp. 13, 55,66; Ward

deposition p. 12).  These processes caused the dust to become airborne and ultimately to settle all

over Plaintiffs' persons and clothing.  At the time of each plaintiff's assignment to the UNICOR

facility, the Defendants knew or were on notice that the materials and processes in use at the

facility exposed plaintiff and other workers to serious risks and hazards, including exposure to

silica dust from the use and alteration of Micore boards.  Silica dust is a known carcinogen and a

cause of serious respiratory ailments and conditions and other health problems.  Defendants

contend that the exhaust and ventilation systems at FCI McKean's UNICOR facility were

sufficient to prevent dangerous exposure by Plaintiffs to dangerous levels of silica dust and other

dangerous byproducts of the manufacturing process.

        In their brief in support of Motion for Summary Judgment, Defendants deny that

Plaintiffs were exposed to dangerous levels of silica dust.  As evidence in support of their

position, Defendants assert that, on July 31, 2001, in response to a letter from OSHA, FCI

McKean had Microbac Laboratories conduct an indoor air quality survey of the UNICOR

factory.  Defendants further contend that, on that date, and the date of an OSHA inspection, air

quality was found to be within OSHA standards.  This evidence is woefully insufficient to

establish Defendants' entitlement to summary judgment.  First, there is no evidence or reason to

believe that the conditions that existed on July 1, 2001, or any other date selected by Defendants, were representative of the working conditions to which Plaintiffs were exposed during their employment at UNICOR.  Indeed, the evidence would support a finding that production levels on the dates preceding the inspection and Microbac testing were substantially less than typical production levels, which actions necessarily skewed the test and inspection results.  Production records obtained by Plaintiffs through discovery document that, from April 15, 2003 through the end of June, 2003, no more than 136 tack boards were processed at the UNICOR facility.  OSHA conducted air sampling on June 17 and 18, 2003.  In contrast, 849 tack boards were processed in October 2003 alone.  (See UNICOR Production Records, attached as Exhibit "A" hereto).

 The Microbac air quality survey and OSHA visit were far from surprise inspections such that these dates could reasonably be expected to represent typical working conditions at the facility.  Rather, the Microbac survey was prearranged by Defendants such that they had ample opportunity to take steps to "clean-up" operations and the facility in preparation for the survey.  There simply is no basis in the record to support a finding that conditions on July 31, 2001 or the date of the OSHA inspection were representative of general or typical working conditions at the facility.  Thus, Defendants have failed in their threshold burden of establishing the absence of a material issue of fact regarding the safety of conditions at the UNICOR facility.

 Moreover, Defendants are precluded from denying the existence of the dangerous conditions at the UNICOR facility based upon their spoliation of evidence.  While this case was pending, but before discovery had opened, and without notice to Plaintiffs, Defendants discontinued manufacturing furniture and related products at the facility and dismantled the facility as a furniture manufacturing facility.  As of January, 2006, the facility was converted to a

11

plastics manufacturing plant.  As a result,  Plaintiffs' industrial hygienist was precluded from

conducting an evaluation of the site and the adequacy of its ventilation system.

In Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76 (3d Cir. 1994), the Third

Circuit explained the spoliation doctrine and its consequences:

> Since the early 17th century, courts have admitted evidence
> tending to show that a party destroyed evidence relevant to
> the dispute being litigated. Jamie S. Gorelick, Steven
> Marzen and Lawrence Solum, Destruction of Evidence, §
> 2.1 (1989). Such evidence permitted an inference, the
> "spoliation inference," that the destroyed evidence would
> have been unfavorable to the position of the offending
> party. As Judge Breyer put it in Nation-wide Check Corp. v.
> Forest Hills Distributors, Inc., 692 F.2d 214, 218 (1st
> Cir.1982), "the evidentiary rationale [for the spoliation
> inference] is nothing more than the common sense
> observation that a party who has notice that [evidence] is
> relevant to litigation and who proceeds to destroy
> [evidence] is more likely to have been threatened by [that
> evidence] than is a party in the same position who does not
> destroy the document." As Judge Breyer also noted, the
> spoliation inference is also seen as having "prophylactic and
> punitive effects." Id. The admissibility of spoliation
> evidence and the propriety of the spoliation inference is
> well established in most jurisdictions, including
> Pennsylvania. See e.g., Nation-wide Check Corp., 692 F.2d
> 214 (1st Cir.1982); Mensch v. Bic Corp., 1992 WL 236965
> (E.D.Pa.1992) (citing Pennsylvania cases).

13 F.3d at 78.  The present case presents a paradigmatic case of spoliation.  Defendants cannot

use their own failure to preserve critical evidence as a means to attack the Plaintiffs' case.

Further, the only protection provided by Defendants to Plaintiffs was a disposable

"Do it Best" or "Breathe Easy" dust or garden mask.  The package for this mask clearly set forth

the following instructions and warning:

> This mask is **not suitable** for use against toxic or hazardous
> air contaminants, such as, but not limited to paint spray
> mists, asbestos, **silica**, cotton or other toxic dusts, fumes,
> gases and vapors.

See Document #38, Exhibit 14 (emphasis supplied).

As further evidence of deliberate indifference, the record contains evidence that the Material Safety Data Sheet ("MSDS") maintained by the Defendants with regard to the Micore fiber board was altered by hand, such that, under the section devoted to personal protection, the word "respirator" was marked out and replaced with the word "mask" or "dust" in order to falsely indicate to UNICOR workers that dust masks provided sufficient protection against inhalation of the airborne silica dust and other dangerous manufacturing byproducts that were present at in the UNICOR facility.

Additionally, Defendants do not dispute that Plaintiffs worked in and around areas where the adhesive commonly knows has Locweld 860/861 was being used. Defendants were also on notice that the use of Locweld 860/861, a contact adhesive, in the UNICOR facility exposed plaintiff and other workers to serious risks and hazards including the risk of fire and health risks associated with the presence of fumes from Locweld 860/861. This fact was plainly apparent from the MSDS for Locweld, yet Defendants took no steps to protect Plaintiffs from these risks and hazards.

Defendants' actions and omissions relative to the dangers and hazards associated with Micore board and Locweld 860/861 were part of an overall pattern of deliberate indifference by defendants to the safety and health of workers at the UNICOR facility, which pattern included inter alia (1) allowing the accumulation of flammable vapors in the work area in violation of 29 C.F.R. §1910.106(e)(6)(i); (2) failure to provide appropriate instructions and training regarding chemicals in use at the workplace in violation of 29 C.F.R. §1910.1200(h)(2)(ii) and 29 C.F.R. §1910.1200(h); (3) allowing obstruction of proper airflow and air filtration within certain work areas in violation 29 C.F.R. §1910.107(b)(1); (4) permitting installation of combustible materials

13

within the spray booth of the UNICOR facility in violation of 29 C.F.R. §1910.107(b)(1);

(5) failing to include appropriate sprinkler equipment in certain areas of the facility in violation

of 29 C.F.R. §1910.107(b)(5)(iv); (6) allowing improper storage and obstructions around the

paint booth of the facility in violation of 29 C.F.R. §1910.107(b)(9); (7) allowing combustible

residue from manufacturing to accumulate in work areas in violation of 29 C.F.R.

§1910.107(g)(2); (8) failing to provide and/or require use of protective equipment where

reasonably necessary for the protection and safety of workers in violation of 29 C.F.R.

§1910.132(a); (9) failure to observe required "lock-out/tag-out" procedures for the protection and

safety of workers in violation of 29 C.F.R. §1910.147(d)(4)(i); (10) allowing storage of materials

in a manner and location that created an unreasonable risk of fire or combustion within the

facility in violation of 29 C.F.R. §1910.176(b), 29 C.F.R. §1910.252(a)(2)(vii), and 29 C.F.R.

§1910.303 (g)(1)(i); (11) requiring operation of machines and other equipment within the facility

that lacked proper guarding or other safety devises reasonably necessary for the protection and

safety of workers in violation of 29 C.F.R. §1910.212(a)(1), 29 C.F.R. §1910.212(a)(3)(ii), 29

C.F.R. §1910.213(r)(4), and 29 C.F.R. §1910.119(c)(2)(i); (12) allowing the existence of

conditions that unreasonably exposed workers to cave-in hazards while conducting work

operations in violation of 29 C.F.R. §1926.651(j)(2); (13) failure to install or place guarding

necessary to protect workers from the hazard of impalement in violation of 29 C.F.R.

§1926.701(b); (14) failure to install railings necessary to protect workers from fall hazards in

violation of 29 C.F.R. §1910.23(c)(1); and (15) failure to provide instruction and training

regarding the proper use of respirators in the workplace in violation of 29 C.F.R.

§1910.134(k)(6).

   During their employment at the UNICOR facility, Plaintiffs were repeatedly and

consistently exposed to silica dust, vitreous fiber, perlite, slag wool, mineral wool, acetone, Toluene, Hexane isomers, N-hexane and other dangerous materials through aspiration, inhalation and direct contact with Plaintiff's skin, lungs, sinuses and eyes. As a result of the dangerous conditions that were permitted to exist at the UNICOR facility, Plaintiff sustained personal injuries, including chronic respiratory problems, sinusitis, irritation and damage to his lungs, sinuses, eyes and skin and sensitization to materials. In addition, Plaintiff has been placed at an increased risk of developing future diseases and health problems, including, but not limited to, cancer, Silicosis, Pneumoconiosis, emphysema, asthma, mycobacterium tuberculosis, nervous system disturbances and peripheral neuropathy.

Thus, the facts of this case are not only analogous to the facts that the Supreme Court found to be actionable in <u>Helling</u>, the facts of this case present an even more compelling basis for finding both a serious health risk to Plaintiff and deliberate indifference on the part of the Defendants.

### D.    The PLRA is Not an Appropriate Basis for Dismissal of the Instant Cases.

Defendants correctly cite the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(e) as a legislative limitation upon causes of action filed by prisoners. However, Defendants suggestion that the PLRA is an appropriate basis for dismissal of the plaintiffs' complaints is not supported by judicial interpretation or the plain language of the statute. The PLRA states that "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correction facility, *for mental or emotional injury* suffered while in custody without a prior showing of physical injury." 42 U.S.C.A. 1997e(e) (emphasis added). Citing the PLRA, the Defendants conclude that each of the Plaintiff's cases should be dismissed. This conclusion is improper for several reasons.

First, the Plaintiffs do not seek damages exclusively for emotional or mental distress. Rather, in addition to emotional distress, Plaintiffs seek damages for physical injuries, which are clearly sufficient to permit recovery despite the limitations of the PLRA. As set forth below, even to the extent the PLRA applies, the physical injuries suffered by each plaintiff are nevertheless sufficient to preclude application of the PLRA to the instant claims for emotional distress.

In support of their position, Defendants cite <u>Mitchell v. Horn</u>, 318 F.3d 523 (3rd Cir. 2003). <u>Mitchell</u>, however, is easily distinguished from the instant case. In fact, when read closely, <u>Mitchell</u> actually lends support for denial of the instant motion. In <u>Mitchell</u>, the plaintiff merely alleged he suffered "emotional trauma, fear and shock…" as a result of the defendants' conduct. <u>Id</u>. at 528. Notably absent in the <u>Mitchell</u> case was any allegation that he suffered physical injuries. The District Court noted the absence of such an allegation, and dismissed the complaint the day it was filed finding, *inter alia*, under the PLRA the plaintiff could not pursue a claim for emotional trauma absent a prior showing of an injury. <u>Id</u>. The Third Circuit, however, reversed, holding that the plaintiff should be permitted the opportunity to amend his complaint in order to allege the existence of any such prior physical injuries. <u>Id</u>.

Thus, <u>Mitchell</u> does not stand for the proposition that, regardless of the scope of plaintiffs' damages, the PLRA mandates dismissal, as Defendants urge. Rather, <u>Mitchell</u> suggests that a prisoner should be given an opportunity to allege and prove the existence of any such injuries prior to a final disposition of his legal rights. In fact, the standard adopted by a majority of federal circuit courts suggests a much more liberal interpretation of "physical injury" than that proposed by defendants. In <u>Mitchell</u>, the Third Circuit adopted the <u>Siglar</u> test adopted by the Fifth Circuit, which is grounded in 8th Amendment jurisprudence. <u>Id</u>. at 535-536, <u>citing</u>,

16

<u>Siglar v. Hightower</u>, 112 F.3d 191, 193-94 (5th Cir. 1997).

There, the Third Circuit expressly refused to adopt "…a test that would prevent those experiencing real physical injury at the hands of government officials from pursuing their rights." <u>Id</u>. Accordingly, the Third Circuit adopted the approach of the Fifth, Ninth and Eleventh Circuits which requires "…a less-than-significant-but-more-than-*de-minimis* physical injury as a predicate to allegations of emotional injury." <u>Id</u>. Thus, under the PLRA, a prisoner need not even allege a significant injury to appropriately claim damages for emotional or mental distress.

Here, each of the plaintiffs have alleged severe physical injuries which preclude application of the PLRA. Each of these injuries has been corroborated through deposition testimony and documents tendered in discovery. Each plaintiff's injuries are briefly set forth below:

<u>Michael Hill</u>. Mr. Hill began working at the UNICOR facility at FCI-McKean on August 1, 2002. Shortly thereafter, Mr. Hill began to suffer from severe skin problems, including rashes, itching and various sores. Moreover, Mr. Hill also suffered from headaches, sinus problems and breathing difficulties. He had not suffered from any such injuries prior to working at the UNICOR facility at FCI-McKean. Mr. Hill's medical records indicate that he repeatedly required medical attention, and received significant treatment for his injuries, including provision of various medicated ointments, antibiotics, and inhalers. Finally, since working at the UNICOR facility at FCI-McKean, Mr. Hill has been diagnosed with Hepatitis C, Rheumatoid Arthritis, and certain kidney problems.

<u>Leslie Kelly</u>. Mr. Kelley began working at the UNICOR facility at FCI-McKean in September of 2002. Shortly thereafter, he began to complain of severe headaches, nose bleeds

and a persistent sore throat. Eventually, Mr. Kelly suffered significant breathing problems, including shortness of breath. Like Mr. Hill, Mr. Kelly sought medical care and was provided medical treatment including provision of various antibiotics and inhalers.

Kevin Siggers. Mr. Siggers began working at the UNICOR facility at FCI-McKean on June 29, 2000. Immediately after he began working there, Mr. Siggers began to suffer from a persistent sore throat, various respiratory problems, nosebleeds and skin lesions. In February of 2003, a biopsy was performed on a lesion which was diagnosed as a staph infection. Mr. Siggers additionally developed allergies, which were not diagnosed until February of 2004. Like the others, Mr. Siggers also received medical treatment for these ailments and was ultimately provided various medications, inhalers, medicated ointments and creams.

Myron Ward. Mr. Ward began working at the UNICOR facility at FCI-McKean in April of 2002. Shortly after he started working there, he began to suffer from various skin ailments, including persistent rashes and sores. He eventually developed lumps on his neck and was diagnosed as having cervical lymphadenopathy. In addition to these lumps, Mr. Ward also suffered from severe headaches, sinus problems and various breathing ailments. Again, like the others, Mr. Ward received medical treatment for these injuries, and ultimately received various medicated ointments, antibiotics and inhalers.

Kenneth Hill. Mr. Hill began working at the UNICOR facility at FCI-McKean on June 19, 2001. Within a month, Mr. Hill began to suffer from various skin ailments, including rashes and sores. This skin problem was characterized in Mr. Hill's medical records as being "chronic", and has never fully resolved. He, like the others, also suffered from nosebleeds and severe headaches. Mr. Hill too received medical treatment for these injuries, and received various medicated ointments, creams, inhalers and antibiotics.

On January 23, 2007, all relevant medical records and file materials were forwarded to Dr. David O. Wilson, M.D., a Board Certified Pulmonologist. Dr. Wilson has been retained by the plaintiffs and asked to review the medical records and evaluate whether the plaintiffs currently suffer, or will likely suffer, from any pulmonary disease caused by the plaintiffs' exposure to silica dust at the UNICOR facility at FCI-McKean. Dr. Wilson will complete his reports upon receipt and review of x-ray films.

In anticipation of Dr. Wilson's report, defendants likewise place undue emphasis upon the findings of their retained expert witness, Dr. Fino[1]. While Dr. Fino opines that the plaintiffs suffered no such physical injuries, his records and report reflects that each of the Plaintiffs demonstrated considerable lung function deficiencies. Despite this finding, Defendants nevertheless assert the plaintiffs malingered, and therefore, they have suffered no physical injury.

As set forth above, the PLRA is expressly limited to claims for emotional distress. Accordingly, it is clear that the PLRA does not provide a basis upon which to grant summary judgment in favor of Defendants. To the extent the PLRA applies to the instant action, plaintiffs have demonstrated sufficient physical injuries to satisfy the PLRA as to their claims for emotional distress.

### E.    The Record Supports Valid Claims against Defendants Housler, Forsyth and LaManna.[2]

A plaintiff, in order to support a viable civil rights claim, must demonstrate two essential elements: 1) that the conduct complained of was committed by a person acting under color of law; and 2) that said conduct deprived the Plaintiff of a right, privilege, or immunity

---

[1] Given the recent tender of records to Dr. Wilson, the ripeness of the instant motions seems rather questionable since defendants have received their expert report, but plaintiffs have not.

[2] Defendants have not challenged the sufficiency of the evidence to support individual liability against Defendant Housler. As discussed below, the evidence is also sufficient against Defendants Forsyth and LaManna. However, with discovery complete and based upon a review of the record as a whole, Plaintiffs do contest Defendants' motion as to Defendants Reome, Fantaskey and Klark..

secured by the Constitution or laws of the United States.  Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995).  To find a supervisory official personally liable for the unconstitutional acts of his subordinates, it must be shown that the supervisor had a duty to instruct the subordinate to prevent constitutional harm, and that "as a result of the official's failure to instruct, the Plaintiff was harmed in the manner threatened."  Haynesworth v.  Miller, 820 F.2d 1245, 1262 (D.C.  Cir. 1987); MacKinney v.  Nielsen, 69 F.3d 1002, 1008 (9th Cir. 1995); Redman, 942 F.2d at 1446-1447; Hansen, 885 F.2d at 646; See also Larez v.  City of Los Angeles, 946 F.2d 630, 646 (9th Cir.  1991) (supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivations of which the complaint is made; or for conduct that showed a reckless or callous indifference to the rights of others.); Hunt v.  Dental Dept, 865 F.2d 198, 200 (9th Cir.  1989) (inmate fails to allege any facts showing role head of state department of corrections played in denial of dental care); Ouzts v.  Cummins, 825 F.2d 1276, 1277 (8th Cir.  1987) (per curiam) (warden's responsibility for generally supervising the operations of the prison not sufficient to establish personal involvement).  Therefore, personal involvement or some affirmative action on the part of a defendant is necessary before he may be found liable for a civil rights violation.  See Rode v.  Dellarciprete, 845 F.2d 1195 (3d Cir.  1988); Stoneking v.  Bradford Area School District, 882 F.2d 720, 729-30 (3d Cir.), cert, denied, 493 U.S.  1044 (1990).

A sufficient causal connection may be established by showing that the supervisor set in motion a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict the injury.  Larez, 946 F.2d at 645; Redman, 942 F.2d at 1447.  A supervisor may also be liable for constitutional violations by his subordinates if the

supervisor knew of the violations and failed to prevent them.  Taylor v.  List, 880 F.2d 1040,

1045 (9th Cir.  1989); Ybarra v.  Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81

(9th Cir.  1984).  Further, supervisors may be liable if the alleged deprivation resulted from a

failure to properly train or supervise personnel, or from an official policy or custom for which the

defendants were responsible.  Ybarra, 723 F.2d at 680.

       In the present case, the evidence supports an adequate basis for liability against

each of the individual Defendants.  Defendant Housler was the safety manager at UNICOR.  He

was directly responsible for safety in the facility and regularly observed working conditions.

(See  Housler deposition p. 10).  He also had personal knowledge of the contents of MSDS

regarding products in use at the facility.  (See  Housler deposition p. 16).  Defendant Forsyth was

Superintendent of Industries at the UNICOR facility.  (See  Forsyth deposition p. 5).   She

supervised Housler and was regularly present on the factory floor.  Finally, Defendant LaManna

was the Warden at FCI McKean and had direct supervisory responsibility over Forsyth and

indirect supervisory responsibility over Housler and the entire UNICOR facility.  He also made

weekly visits to factory floor and was personally made aware of the OSHA report.  (Lamanna

Deposition, pp. 9-10, 14-16).

       Each of these Defendants was either personally involved in the actionable

conduct that resulted in constitutional injury to Plaintiffs or his or her responsibility for adoption

or implementation of the policy or policies that led to Plaintiffs' constitutional injury.

**F.     The Rights of Plaintiff Violated by Defendants were "Clearly Established," and No Defendants is Entitled to Qualified Immunity.**

       Qualified immunity shields government officials performing discretionary

functions only if their conduct does not violate clearly established statutory or Constitutional

rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Anderson v. Creighton, 483 U.S. 635 (1987), the Supreme Court further clarified the standard for qualified immunity, stating: "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action,... assessed in light of the legal rules that were "clearly established" at the time it was taken." Id. at 639 (citation omitted).

In the present case, Defendants cannot seriously contend that the constitutional rights of Plaintiffs at issue were not clearly established at all times relevant to this action. The Eighth Amendment right of inmates regarding freedom from exposure to environmental hazards while incarcerated was clearly established no later than 1993, when the Supreme Court decided Helling v. McKinney, 509 U.S. 25 (1993). While it is true that government officials are not expected to be legal scholars like law professors, Ward v. San Diego County, 791 F.2d 1329, 1332 (9th Cir.), cert, denied sub nom., Duffy v. Ward, 483 U.S. 1020 (1987), any reasonable official in the position of the Defendants in this case would have recognized the illegality of their deliberate indifference to the foregoing rights.

IV.     **CONCLUSION**

      For the reasons stated above, Plaintiffs respectfully requests that the Court deny

Defendants' Motion.

            Respectfully submitted,

            KNOX McLAUGHLIN GORNALL &
            SENNETT, P.C.

            BY: /s/ Richard A. Lanzillo, Esq.
                Richard A. Lanzillo, Esquire
                PA53811
                Neal R. Devlin
                PA89223
                Bryan G. Baumann
                PA95046
                120 West Tenth Street
                Erie, PA  16501
                Telephone (814) 459-2800
                Facsimile (814) 453-4530
                Email rlanzillo@kmgslaw.com

# 714566